## In re FLORIDA TRANSPORTATION CO.

Railroad & Public Utilities Commission.
April 24, 1956.

Frank Carter, Miami, for Florida Transportation Co.

R. Y. Patterson, Jr., assistant counsel, for the commission staff and the public.

Chairman WILBUR C. KING, commissioners JERRY W. CARTER and ALAN S. BOYD participated in the hearing and disposition of this matter.

BY THE COMMISSION.

Pursuant to order to show cause #3421 dated March 8, 1956 the commission held a public hearing on March 28, 1956 in its hearing room at 700 S. Adams St., Tallahassee.

Florida Transportation Co., a corporation, hereinafter referred to as the respondent, with its principal place of business at 644

N. W. 24th St., Miami, holds certificate of public convenience and necessity #260, which authorizes the operation of an auto transportation company as a common carrier of passengers and their baggage between Homestead, Florida, and Homestead Air Base. Respondent also holds certificate #L-53, which is not involved in this proceeding.

In docket #4308-CCB South Dade Motor Co., a corporation, sought approval of the transfer of certificate #260 from respondent to that company. South Dade Motor Co. operated under telegraphic temporary authority from the commission from June 29, 1955 until order #3422, denying that petition and canceling the temporary authority, was entered on March 8, 1956.

Respondent contends that such temporary operation by South Dade Motor Co. reactivated certificate #260. We do not so interpret the statute and our rules, as will more fully appear in our development of the facts finding that respondent abandoned its certificate #260.

On September 19, 1955, at the hearing on the petition for transfer, the president of the respondent corporation testified that his bus line had quit operating during the early part of 1946 and had not operated since 1946 except during the months of September, October and November, 1953, that his certificate lay dormant from 1946 with no attempt to operate thereunder, that he had junked all of his equipment, that the only thing existing was the certificate, and that he had not paid any mileage tax to the state comptroller since the service had been stopped.

In view of such testimony in that docket, the commission ordered respondent in this docket to show cause, if any it could and so desired, why an appropriate order should not be entered canceling certificate #260 for failure to operate over any route or schedule or to any point or terminal for a period of 90 days and for failure to file appropriate mileage tax reports with the comptroller of the state of Florida.

At the hearing E. T. Hamil, director of the commission's department of transportation, testified—that on November 16, 1945 the commission authorized respondent to suspend service for 90 days; that on May 10, 1951 respondent reinstituted service under certificate #260; that on December 15, 1953 the commission authorized respondent to suspend service for 90 days; that on March 16, 1954 the commission again authorized respondent to suspend service for 90 days; and that the authority granted on that date, March 16,

1954, appears to be the last authority granted by the commission to the respondent to suspend operations.

M. C. O'Berry, director of the state comptroller's motor fuel tax and automobile mileage tax department, testified that his records did not reflect any operation by respondent under certificate #260. Exhibit #2 showed that mileage tax paid by respondent during July 1953, to and including January 1956, reflected that the mileage tax incurred was under certificate #L-53 and not under certificate #260.

H. H. Paul, Jr., testified that he is general manager of South Dade Motor Co. and, in addition, since January 28, 1956, the Homestead manager of respondent's operations from Homestead to Homestead Air Base. Exhibit #3 (which has disappeared from the file along with exhibits 5 and 7) consisted of a purported lease arrangement between the respondent and the South Dade Motor Co. executed on January 28, 1956. This dual position manager testified that between June 29, 1955 and January 28, 1956 South Dade Motor Co. operated buses over the route involved herein. He admitted a copy of the purported lease arrangement was never filed with the commission in compliance with our rule.

He knew nothing about the operation of respondent until January 28, 1956. He admitted that respondent never operated that route between June 29, 1955 and January 28, 1956. The two vehicles purportedly leased to respondent held commission tags in the name of South Dade Motor Co. When the South Dade Motor Co. bus stopped running on January 27, 1956, those tags were not turned in to the commission. Furthermore, South Dade Motor Co. did not notify the commission that it had ceased operation on January 27, 1956. Between January 27, 1956 and March 13, 1956 South Dade Motor Co. *or* respondent were operating over this route pursuant to an arrangement of which this commission had no knowledge until this hearing on this show cause order.

R. J. Walters, president of respondent corporation, corroborated Mr. Hamil's testimony by admitting respondent operated some six to seven weeks in 1953 pursuant to the commission's directive. On December 15, 1953 respondent received a 90 day suspension and on March 16, 1954 another 90 day suspension. Respondent did not resume operations after June 16, 1954 until the purported lease arrangement on January 27, 1956. He admitted that since 1946, except during the short period in 1953, no mileage tax had been paid to the comptroller. He further admitted not filing a copy of the purported lease arrangement with the commission.

Respondent filed on March 29, 1956, as late filed exhibits, photostatic copies of respondent's mileage tax reports for January and February, 1956, which had been filed with the comptroller on March 22, 1956. Such transaction was subsequent to the show cause order issued herein and, therefore, like the lease arrangement carries little probative evidentiary value on the merits of this question.

From the testimony and evidence adduced in this cause a majority of the commission finds—

1. On November 12, 1945 respondent discontinued bus service between Homestead and Homestead Air Base.

2. No operations were then conducted under certificate #260 until May 10, 1951, when respondent was ordered by the commission to operate.

3. On December 15, 1953 respondent was authorized to suspend operations for 90 days.

4. On March 16, 1954 respondent was granted another suspension for 90 days.

5. No further suspension orders were issued and no authority to discontinue service was granted to respondent, therefore from June 16, 1954 until January 28, 1956 respondent conducted no operations and paid no mileage taxes to the state and had abandoned its route or schedule in violation of sections 323.09(2) and 323.10, Florida Statutes 1955, and bus rules 21, 30 and 49 of the commission.

6. On June 29, 1955 this commission granted South Dade Motor Co. telegraphic temporary authority to operate between Homestead and Homestead Air Base pending application for transfer of certificate #260. The operation was conducted by South Dade Motor Co. in its vehicles and mileage tax was paid by that company. Order #3422 canceled such authority and denied the application.

7. On January 28, 1956 a purported lease arrangement was entered into and neither respondent nor South Dade Motor Co. ever notified this commission of such lease arrangement or registered vehicles thereunder. This arrangement appears somewhat questionable in view of our bus rules 21, 22, 28, 29, 30, 32, 34, 49 and 50, and we are unable to reconcile the fact that such arrangement was never called to our attention until the defense to the show cause order was presented. Section 323.09(1), Florida Statutes 1955, and bus rule 59 require the certificate holder to abide by all rules of the commission.

From the foregoing findings we conclude that respondent has been guilty of such conduct as in law makes it our duty to cancel certificate of public convenience and necessity #260 for violation of the provisions of sections 323.08, 323.09 and 323.10, Florida Statutes 1955, and the aforesaid bus rules of this commission.

It is therefore ordered that certificate of public convenience and necessity #260 heretofore issued to Florida Transportation Co. be, and the same is, hereby canceled.

Commissioner JERRY W. CARTER (dissenting).

My long tenure in office gives me a knowledge of the final results of previous orders issued by this commission that the other present commissioners may not have, unless they have taken the trouble to review the voluminous records accumulated by the commission in the years past. My dissent to commission orders which I have considered to be unfair to R. J. Walters, the owner of Florida Transportation Co., began during, if not before, World War II, when this commission first assumed a belated jurisdiction over transportation to and from military training camps, airfields, race tracks, and sightseeing and bus and limousine operations and deprived R. J. Walters and his companies of a large part of his former business which he should have enjoyed, under a fair application of the Grandfather Clause. The past record will show that I have dissented through the years to discrimination against R. J. Walters and his companies by this commission and once again I feel compelled to dissent to the unfair cancelation of its certificate #260.

On March 8, 1956 this commission issued two orders with respect to Florida Transportation Co. One was order #3421 which directed this company to appear before the commission and show cause why its certificate #260 should not be canceled for failure to operate over any route or schedule or to any point or terminal for a period of 90 days and for failure to file appropriate mileage tax reports with the state comptroller.

I dissented to the issuance of this show cause order because the commission knew very well that the office of the state comptroller had not notified this commission of any delinquency of any kind in the mileage tax reports of the defendant company and that this certificate #260 had been operated for the preceding eight months in a manner highly satisfactory to the public and to the city of Homestead and the Homestead Air Base.

The commission recited the fact of this operation of certificate #260 since June 29, 1955, in its other order, order #3422, issued on the same date.

The latter, order #3422, denied the joint petition of Florida Transportation Co. and South Dade Motor Co. for the transfer of certificate #260. Bear in mind that the owners of South Dade Motor Co. operate the intra-city bus system in Homestead and if allowed to operate the franchise to the Homestead Air Base could afford the public the convenience of transfers. I dissented to this order #3422 also, as is shown by the commission's vote sheet, although the order itself does not disclose my dissenting vote. I dissented because South Dade Motor Co. with the approval and encouragement of this commission, claimed to have lost $30,000 in building up the first local bus service in the Homestead area, and because never before had the commission refused to transfer a certificate on the grounds of non-compliance with certain provisions of bus rule 10 which were omitted from the commission's official rule book. In all former cases the transfer has been approved subject to later compliance by the transferee.

The evidence presented at the public hearing on show cause order #3421 shows that on June 29, 1955 this commission granted temporary authority to South Dade Motor Co. to transport passengers under the certificate of Florida Transportation Co. between Homestead and Homestead Air Base, via Leisure City. Operation actually began in July, 1955, and continued until January 28, 1956, at which time Florida Transportation Co. notified the commission by letter that it was resuming operation between Homestead and Homestead Air Base with two leased buses bearing this commission's tags, ## 114 and 106, and the required signs and insurance.

I dissent to this order canceling certificate #260 because the defendant is guilty neither of failure to operate nor of failure to file appropriate mileage tax reports with the comptroller.

The commission's director of department of transportation, its chief enforcement officer, was unable to point out wherein the above mentioned letter did not constitute full compliance with the commission's bus rules with respect to leasing buses.

He testified that the bus rule on leasing required that Florida Transportation Co. register leased equipment with the commission —despite the fact that this rule was read into the record to show that registration was not required of leased equipment which was already registered with the commission.

He freely testified on direct examination that Florida Transportation Co. had no equipment registered with the commission since 1946, then on cross-examination testified that he really didn't know without consulting his records! This was in the face of the reports

from his inspectors which he had just read into the record enumerating the Florida Transportation Co. buses they had seen bearing 1956 commission tags, and in the face of his admission that Florida Transportation Co. was free to transfer its own buses, registered with the commission, from its race track and sightseeing operations under certificate #L-53 to its Homestead operation under certificate #260!

Opposed to this evidence were the bank statements of Florida Transportation Co. showing that it had opened a bank account in a Homestead bank on January 28, 1956, had made a daily deposit since then of all receipts from its Homestead operations, and had paid all operating expenses, including rent on the leased buses, from that account. A written lease of the two buses from South Dade Motor Co. to Florida Transportation Co., dated January 28, 1956, was introduced into evidence, also the sign painter's bill for signs reading "leased to Florida Transportation Co., Fla. R.R. & P.U.C. Certificate No. 260" which was attached to the buses on January 28, 1956 and remained so attached until the commission's inspectors forced these buses to stop operating on March 14, 1956, on the grounds they were being operated by South Dade Motor Co. after cancelation of its temporary authority by order #3422 on March 8, 1956.

Florida Transportation Co. immediately sent two of its own buses from Miami to Homestead and replaced them in its Miami operation with the two leased buses from Homestead. The following day, the commission's director of department of transportation ordered his inspector to stop the operation of Florida Transportation Co. buses in Homestead on the ground that he had disapproved the schedules filed on January 28, 1956 by this company for the Homestead operation because the procedure for filing schedule *changes* had not been complied with — this despite the fact that these disapproved schedules were identical with the previously approved schedules for this operation by South Dade Motor Co. He then refused to allow operation to resume on older, already approved, schedules on the grounds that there were none! He withheld his approval of these schedules until April 11, 1956!

Certified photostatic copies of mileage tax reports from the office of the comptroller show that mileage taxes were properly reported and paid on operations under certificate #260 from July 1955 through January 28, 1956, by South Dade Motor Co. which during said period was operating under certificate #260 in accordance with temporary authority granted by the commission, and from January 28, 1956 through February 1956, mileage taxes were reported and paid by Florida Transportation Co.

In canceling certificate #260 this commission obviously believes that it can justify doing on its own motion that which it has steadfastly refused to do on complaint of competitive carriers under its jurisdiction. I disagree.

In order #2604, docket #3106-CCT, In re Complaint of Leonard Brothers Transfer & Storage Co., et al, v. W. A. Dickinson Transfer Co., the commission held as follows—"We have previously declined to cancel certificates for lack of operation for a 90 day period where it appeared that the service under the particular certificate had been resumed or an application for transfer of the certificate had been filed prior to the filing of a complaint as to failure of service. See order #2323, docket #2209-MC and 893, In re Complaint of Milton Coach Line v. Capital Motor Lines, etc.; order #2369, docket #2059-MC, In re Amended Joint Petition of Poinciana Transfer, etc.; order #2382, docket ##2472-MC and 2384-MC, In re Complaint of John H. Mitchell v. Tamiami Trail Tours, Inc., etc.; order #2382, docket ##2416-MC and 284, In re Joint Petition of the Administrator of the Estate of Ernest W. Cruickshank, etc.; order # 2412, docket #3053-CCB, In re Joint Petition of Hartsell Brothers, d/b/a Tam-Beach Coach Line, Inc.; and University City Transfer Co. v. Florida Railroad Commission, 124 Fla. 308, 168 So. 413."

In order #3052, docket ##3820,CCT and 3855-CCT, dated December 13, 1954, In re Joint Petition of Central Truck Lines, Inc., etc., and In re Petition of Southern Transfer & Storage Co., et al, for order canceling, etc., the commission held as follows " . . . that the application [for transfer of certificate] herein was filed June 11, 1953, and the complaint of the protestants was not served until July 22, 1953, and such complaint is, therefore, ineffective under the principle announced in University City Transfer Co. v. Florida Railroad Commission, 168 So. 413."

In order #2412, docket #3053-CCB, In re Joint Petition of Hartsell Brothers, d/b/a Tam-Beach Coach Line, Inc., the commission wrote as follows—

At the hearing protestants moved to dismiss the petition and to cancel and revoke the certificate on grounds that the certificate holder violated the provisions of sections 323.09 and 323.10, F.S. 1949, in that it failed to operate for a period of ninety days, that it failed to report and pay the mileage tax levied and prescribed by law for a period of ninety days and on the further ground that Southern Tours, Inc. during the pendency of this joint petition has operated the route of Tam-Beach Coach Line in violation of law and without any authority from this commission.

Protestants contend that, since there was a period of more than ninety days between June 1, 1949 and November 23, 1949 during which there

was no operation by Tam-Beach Coach Line and during which time no authority had been granted by the commission for suspension, the certificate became void at the end of ninety days from June 1, 1949 by operation of law and that there is nothing left to be transferred. The statute, however, is not self executing and the affirmative action of this commission is necessary to revoke a certificate. Here, as in University City Transfer Co. v. Florida Railroad Commission, 124 Fla. 308, 168 So. 413, no affirmative action has been taken to revoke the certificate other than protestant's aforesaid motion made after the petition for transfer of said certificate. In addition, here the commission after the conclusion of the period during which no authority for suspension had been granted, approved a further suspension, thereby condoning the previous suspension.

The apparent purpose of the statutory provision for cancelation of certificates due to lack of operation for a period of ninety days is to protect the public interest to the end that public convenience and necessity be served rather than to eliminate a competitor for another or other carriers. Protestants here, other certificate holders, in reality do not complain because of lack of service to the public under this certificate. They complain because it is proposed that the certificate be transferred to a carrier who apparently intends to reinstitute the operation and serve the public. They filed no complaint or petition for revocation of this certificate during the period between June 1 and November 23, 1949 but have waited to register their complaint until the filing of this petition for transfer of the certificate. Under these circumstances it is the opinion of this commission that the certificate should not now be canceled or approval of its transfer disallowed on grounds of failure of operation by the transferor.

As to protestants' complaint that the operation is now being conducted by the transferee under lease arrangements with the transferor without approval by this commission, it appears that such has only been done since the filing of this petition for approval of the transfer. The commission does not consider that the petition should be dismissed for such reason.

As to protestants' complaint of the failure of Tam-Beach Coach Line to pay mileage tax to the state of Florida when due, it appears that all due mileage tax has been paid. The commission finds from the evidence that the delinquency in payment was not willful and that the approval of this transfer should not be denied on that account.

I have never known of any other holder of a certificate of public convenience and necessity receiving from this commission such a continuous series of unfair and arbitrary treatments as Mr. R. J. Walters and his companies have received in the past and particularly in this instance.

In spite of the fact that the defendant's company is owned by a man who had admitted one time to have been a member of the Republican Party I will not be a party to such injustice to any citizen of Florida.

In contrast to the drastic and hasty action of this commission in canceling certificate #260, I would like to call your attention to the customary and proper leniency to certificate #372 we issued to South Dade Coaches Inc. on May 28, 1951, to transport passengers to and from South Miami and the Homestead Army Air Base.

The records will show that this commission has granted continuous 90 day suspensions of operations. These suspensions cover the entire period from May 28, 1951 up to, and including, June 15, 1956. No operations have been performed and the comptroller's records will show that no mileage taxes have ever been paid by South Dade Coaches, Inc. During this period of non-operation, this commission, in docket #4572-CCB, order #3464, dated as late as April 6, 1956, granted certificate #372 the privilege of changing routes travelled or proposed to be travelled.

Bear in mind that this certificate #372 is supposed to serve from South Miami to the Homestead Army Air Base, the same base that certificate #260 has been and is now serving from the city of Homestead.

I have voted for and supported the customary and lenient treatment accorded certificate #372 and many others — and cannot reconcile the drastic and unfair treatment accorded Florida Transportation Co., owned by Mr. R. J. Walters, in canceling his certificate #260, which now and has for some time been efficiently operated from Homestead to the Homestead Army Air Base.

Due to the haste in the proceedings of this case, I have not had access to the transcript of the court reporter.